# Fleming *v.* The State.

## *Murder.*

(Decided March 2, 1907.   43 So. Rep. 219.)

1. *Criminal Law; Evidence; Res Gestea.*—A witness who was pres-
   ent during the conversation between defendant and deceased
   just before the shooting was entitled to testify as to the con-
   versation which passed between defendant and deceased, as
   part of the res gestea.

2. *Homicide; Evidence; Previous Difficulty.*—It was incompetent for
   the defendant to show the details of another difficulty occuring
   at a previous time and different place, and to show who turned
   out the light on that occasion.

3. *Same; Threats.*—In the absence of evidence showing self defense
   and where there is no conflict in the testimony as to who was
   the aggressor, defendant was not entitled to show threats made
   by deceased against him.

4. *Witnesses; Examination; Questions Assuming Facts.*—While the
   threat might have been admissible in another form, it was
   proper not to permit the question "If witness did not hear de-
   ceased, when he turned out the lights at C.'s house say that he
   would kill defendant or make defendant kill him," as assuming
   a fact and as calling for illegal evidence in connection with
   legal evidence.

5. *Same; Examination; Responsiveness of Answer.*—Defendant
   asked witness if defendant did not offer to shake hands with
   deceased, and witness answered "Yes sir, he offered to shake
   defendant's hand, and I said come on now, come on!"   Held,
   answer was properly excluded as not responsive to the ques-
   tion.

6. *Criminal Law; Instructions; Province of Jury.*—A charge assert-
   ing that the jury should not capriciously reject the testimony
   of a named witness, but if they could reconcile the testimony
   in the case so as to make such witness and the other witnesses

speak the truth, they should do so, is invasive of the province of the jury and properly refused.

7.  *Same; Reasonable Doubt.*—A charge asserting that if there was a probability of defendants innocence they should acquit him was proper and its refusal error.

8.  *Weight of Evidence.*—One witness was shown to have died since the preliminary trial at which he testified and his testimony was reduced to writing and was identified. Another witness was absent for whom a showing was made which was admitted. The court refused to instruct the jury that the written statement of both witnesses should be considered just as if they were present and had testified on the trial. Held, the instruction was properly refused as including the statement of the deceased witness as well as the showing for the live witness.

9.  *Homicide; Instructions; Self Defense.*—A charge asserting that if defendant did not provoke or encourage the difficulty, but was approached by deceased in an angry and insulting manner, and deceased acted towards defendant in such a way as to indicate to a reasonable man that it was his purpose to strike defendant with a sode water bottle, defendant was authorized to anticipate him and shoot, ignores defendant's duty to retreat, and was properly refused.

10.  *Same; Imminent Peril.*—A charge asserting that if defendant did not provoke the difficulty, but was approached by deceased in an angry and insulting manner, and deceased advanced towards defendant with one hand containing a soda water bottle in such a manner as to indicate to a reasonable man that it was his purpose to strike defendant with such bottle, defendant was authorized to anticipate and shoot first, pretermits an honest belief on defendant's part that he was in iminent peril, and is properly refused.

11.  *Same; Freedom from Fault.*—A charge asserting that the danger that would excuse one from killing another need not be real or actual and if the jury believe that the appearance of danger confronting defendant at the time was such as to produce a reasonable belief in defendant's mind that his life was in danger and that there was no other means open to avoid danger but by taking deceased's life, defendant was without fault and there being no reasonable means of escape without increasing his peril then he should be acquitted, though deceased had no pistol or other deadly weapon at the time, was properly refused as being argumentative and as assuming freedom from fault.

APPEAL from Anniston City Court.

Heard before Hon. THOS. W. COLEMAN, JR.

Will Fleming was convicted of homicide, and he appeals. Reversed and remanded.

The defendant was indicted for killing Jule Tires, with malice aforethought, by shooting him with a pistol. The evidence for the prosecution tended to show that the killing was done at the house of the witness Roland in West Anniston and about 10 o'clock at night. The deceased was at the house, and the defendant came there about 20 minutes before the shooting took place. The witness said he was attracted by an argument or conversation between defendant and deceased, in which defendant said: "Jule, I would not hurt a hair on your head. You know you and me has been buddies for five or six years." Witness then testified that he went on in the house, and when he got in he heard defendant say: "I will kill you, God damn you." Witness said: "Will, what is the matter?" The defendant moved to exclude the statement, "Will, what is the matter?" but the court declined to do so, and defendant excepted. Witness then testified: "I heard Will say, 'I'll kill you,' and witness said 'Will, what are you doing?' and about that time he made a shot." Defendant moved to exclude the statement, "Will what are you doing?" but the court refused to do so. Continuing his testimony, witness said: "When the defendant said he would kill the deceased, defendant was standing close to the door of the veranda. I was going into the door, and was just inside of the door, and the deceased was right over near the table on opposite side of the room, near the ice cream freezer." The state then asked the witness: "What was Jule doing?" Witness answered: "Going into the ice cream freezer." Defendant moved the court to exclude this statement of the witness, and the court declined, and the defendant excepted. Fleming shot the deceased just back of the left shoulder, the ball coming out near the right nipple, from which defendant died in about half an hour. Another witness, testifying for the prosecution, stated that there had been some shooting at Cox's house just before defendant came down to Roland's house, and the defendant, on the cross, asked him, "Who turned out the lights up there at that house?"

The defenedant then asked this witness, "Were you and Jule and Will up at Cox's house together a short while prior to the time that the shooting occurred at Roland's house?" The court sustained an objection to this question. The defendant then asked this witness: "Did not you hear the deceased, when he turned out the lights at Cox's house, say that he would kill Will Fleming or make Will kill him?" The court sustained an objection to the question. The defendant asked the witness Taylor: "If defendant offered to shake hands, say so." Witness answered: "Yes ,sir; he offered to shake the deceased's hand, and I said: 'Come on, now! come on!'" The state moved to exclude the testimony as to what witness said to deceased, and the court granted the motion.

At the conclusion of the testimony the defendant requested the following charges, which the court refused to give: "(1) The court charges the jury that you should not capriciously reject the testimony of Howard Taylor, but that if you can reconcile the testimony in this case, so as to make Howard Taylor and the other witnesses speak the truth, you should do so. (2) The court charges the jury that, if there is a probability of the defendant's innocence, you should acquit him. (3) The court charges the jury that the written statement of the witnesses McCombs and Ganey Slaughter should be considered just as if these witnesses were present and had testified on the trial. [The witness Slaughter was shown to have died since the preliminary trial, at which time he testified and his testimony was taken down in writing. After proof of his death and identification of his testimony, the written testimony was admitted. A showing was made for the witness McCombs who was absent.] (4) The court charges the jury that if the defendant did not provoke or encourage the difficulty, but was approached by the deceased in an angry and insulting manner, and the deceased acted towards the defendant in such a manner as to indicate to a reasonable man that it was his purpose to strike the defendant with a soda-water bottle, the defendant was authorized to anticipate him and shoot. (5) The court charges the jury that if the defendant did not provoke

or bring on the difficulty, but was approached by the deceased in an angry and insulting manner, and the deceased advanced towards the defendant, with one hand containing a soda-water bottle, raised in such manner as to indicate to a reasonable man that it was his purpose to strike the defendant with said soda-water bottle, then the defendant is authorized to anticipate him and shoot first. (6) The court charges the jury that the danger that would excuse one for killing another need not be real or actual. It may now be known that all the appearances of danger were false, and that Jule Tires never intended to do defendant any harm, and that he did not have a pistol or other deadly weapon. Yet if the jury believe from all the evidence in this cause that the appearances of danger confronting the defendant at the time were such as to produce a reasonable belief in the mind of the defendant that his life was in danger, or that he was about to suffer great bodily hurt, and that there was no other means at the time open to defendant to avoid danger but by taking Jule Tires' life, the defendant being without fault at the time and there being no reasonable means of escape without increasing his peril, the law holds him harmless, and the jury must acquit him, although Jule Tires may have had no pistol or other deadly weapon at the time."

KNOX, ACKER & BLACKMON, for appellant.—No brief came to the reporter.

ALEXANDER M. GARBER, Attorney General, for State. —No brief.

ANDERSON, J.—There was no error in permitting the witness Roland to testify what the defendant said to him and what he said to the defendant immediately preceding the shooting. All of this was a part of the res gestæ. The question and answer were produced by the instinctive, upon the occurrence ; the spontaneous, expression of the defendant and the witness.—*Nelson v. State*, 130 Ala. 83, 30 South. 728; *Wesley v. State*, 52 Ala. 182.

[Fleming v. The State.]

The trial court properly declined to let the defendant prove who turned off the light and to enter into the details of a difficulty that ocurred some time previous and at another place.

There was no error in refusing to let the defendant prove the alleged threat made by deceased at Cox's house. There had been no evidence of self-defense up to that time, nor was there a conflict in the evidence as to who was the aggressor.—*Gregory v. State*, 140 Ala. 16, 37 South. 259; *Ragsdale v. State*, 134 Ala. 24, 32 South. 674. Moreover the question was so framed as to justify the trial court in sustaining the objection, even if the threat was admissible. It practically called upon the witness to not only testify as to the threat, but in effect compelled him to testify as to "Jule's" turning out the lights, in order to tell about the threat.

There was no error in excluding what the witness Howard Taylor said after defendant offered to shake hands with the deceased. It was not responsive to the question asked by the defendant's counsel.

There was no error in excluding what deceased said to defendant in the saloon, nor what happened up there, nor what the defendant said about showing them how near he came to being shot in the leg while at Joe Roland's house.

Charge 1, requested by defendant, was properly refused. It invaded the province of the jury.—*Crane's Case*, 111 Ala. 45, 20 South. 590 (charge 3).

The trial court erred in refusing charge 2, requested by the defendant.—*Bones v. State*, 117 Ala. 138, 23 South. 138; *Whitaker v. State*, 106 Ala. 30, 17 South. 456;; *Croft v. State*, 95 Ala. 3, 10 South. 517. It was not duplicated in giving charge 5.

The trial court did not err in refusing charge 3. It might be correct, if relating only to the witness for whom the showing was made, which we need not decide; but it applied the rule to the testimony of the deceased witness also. The evidence as to this witness was also admissible as secondary evidence, because of proof of his death; and it cannot be said that the injury was to consider it just as if he was there on the stand.

[Brown v. The State.]

Charge 4, requested by the defendant, was properly refused. If not otherwise bad, it ignores the defendant's duty to retreat.

Charge 5, requested by the defendant, was properly refused. If not otherwise bad, it pretermits an honest belief on the part of the defendant that he was in imminent peril.—*Harrison v. State,* 144 Ala. 20, 40 South. 568; *Scales v. State,* 96 Ala. 76, 11 South. 121.

There was no error in refusing charge 6, requested by the defendant. It was argumentative, and pretermits the defendant's freedom from fault in bringing on the difficulty. The defendant may have been without fault at the time of the shooting, yet he may. not have been free from fault in bringing on the difficulty.

For the error above designated, the judgment of the city court is reversed, and the cause remanded.

Reversed and remanded.

Tyson, C. J., and Haralson, Dowdell, Simpson, and McClellan, JJ., concur.